UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JIMMY M. ISBELL,

    **Plaintiff,**

    v.       No. 3:24 CV 119

KHAN and FRANCISCAN HEALTH ICU,

    **Defendants.**

## OPINION and ORDER

Jimmy M. Isbell, a prisoner without a lawyer, was given the opportunity to file an amended complaint after the court determined his original complaint did not state a claim for relief. (DE # 13.) He has done so. (DE # 21.) Under 28 U.S.C. § 1915A, the court must review the merits of that amended complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

Isbell alleges that on September 12, 2023, he was sent from Indiana State Prison to an outside hospital, Franciscan Health, for a hip surgery to treat hip dysplasia. During the surgery, the anesthesiologist, Dr. Tayaab Khan, allegedly inserted a tube too far down his throat and into his left lung, causing him to go into respiratory arrest

twice. Isbell alleges that when he coded, Dr. Khan "seiz[ed] up or panicked" and seemed to try to leave the scene. (DE # 17-1 at 3.) After the first respiratory arrest, the surgical team paused while it was resolved. The anesthesia team reported that he appeared to be stable and believed the arrest was due to hypertension. When the surgery resumed, the surgeon dislocated the hip and continued the procedure. Soon after, Isbell went into respiratory arrest again. The surgeon assisted Dr. Khan with the placement of a triple lumen, and then Dr. Khan placed an arterial line. A CT scan revealed that Isbell's left lung had completely collapsed from the tube being inserted too far into his airway. Isbell was transferred to the Intensive Care Unit for further observation. Isbell sues Dr. Khan and the Franciscan Health ICU.

Isbell's previous complaint did not state a claim because it had not plausibly alleged that Dr. Khan was a state actor for purposes of liability under 42 U.S.C. § 1983 or that the doctor's actions could be considered deliberate indifference, rather than just negligence. (DE # 13.) Isbell addresses both matters in his amended complaint, but it is unnecessary to consider whether Dr. Khan could be a state actor because the amended complaint does not plausibly allege that Dr. Khan's actions were deliberately indifferent.

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). There is no question that

2

Isbell had a serious medical need. Instead, the question is whether Dr. Khan's actions during the surgery could be considered deliberate indifference.

Deliberate indifference is a high standard. "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (cleaned up).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). "[I]n the context of medical professionals, it is important to emphasize that medical malpractice, negligence, or even gross negligence does not equate to deliberate indifference." *Johnson v. Doughty*, 433 F.3d 1001, 1012–13 (7th Cir. 2006). In the case of a "botched" medical

procedure, to show more than negligence, a plaintiff may allege the doctor "maliciously intended to cause [the plaintiff] pain or otherwise performed the procedure in a way that he knew would create a substantial risk of complications." *McGowan v. Hulick*, 612 F.3d 636, 641–42 (7th Cir. 2010). Or Isbell could allege facts allowing a reasonable inference that the doctor "intentionally misrepresented [his] findings, knowingly committed some other form of wrongdoing, or did not care whether [his diagnosis was] correct or not." *Rodgers v. Rankin*, 99 F.4th 415, 420 (7th Cir. 2024). Dr. Khan's actions as alleged in the complaint do not plausibly constitute deliberate indifference.

The first alleged error on the part of Dr. Khan occurred when he inserted the tube too far into Isbell's airway, ultimately causing his lung to collapse. While, of course, this could have been done on purpose, the complaint contains no facts to support an inference that Dr. Khan did this purposely to cause harm. "[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original).

When Isbell coded, he alleges Dr. Khan "seiz[ed] up or panicked" and tried to leave. (DE # 17-1 at 3.) Even if Dr. Khan did freeze, he did not prevent the other medical professionals from stabilizing Isbell; Dr. Khan's alleged inaction here did not cause further harm. Isbell also alleges that Dr. Khan attributed the first respiratory arrest to hypertension and indicated the surgery could continue. Although that turned out to be a misdiagnosis—the respiratory arrest was due to a collapsed lung, not hypertension— there are no factual allegations suggesting that Dr. Khan was aware that he was wrong

4

or that his misdiagnosis was so far afield so as not to be based on medical judgment. That misdiagnosis likely led to the second respiratory arrest, which according to the complaint was competently handled.

Isbell's main argument in favor of deliberate indifference is that he had no complications during a prior hip surgery with a different anesthesiologist, but this surgery with Dr. Khan as the anesthesiologist had complications. The mere fact that complications arose does not show deliberate indifference. *See Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004) (negligence, incompetence, or even medical malpractice do not amount to deliberate indifference); *see also Jones v. Sood*, 123 F. App'x 729, 731 (7th Cir. 2005) (the Eighth Amendment does not "guarantee success" in the treatment of a particular condition). Thus, a claim against Dr. Khan for deliberate indifference cannot proceed, and, by extension, neither can a claim against the hospital.

Isbell next argues that he can proceed under 42 U.S.C. § 1395dd, the Emergency Medical Treatment and Active Labor Act ("EMTALA"). That federal statute is inapplicable here. "The EMTALA was enacted to address the problem of patient 'dumping,' in which hospitals would not provide the same treatment to uninsured patients as to paying patients, either by refusing care to the uninsured patients or by transferring them to other facilities. EMTALA imposes two duties on hospitals with respect to patients who come to their emergency rooms: first, to provide medical screening for any emergency condition; and second, as to any emergency condition, to stabilize the patient prior to any transfer to another facility." *Beller v. Health & Hosp. Corp. of Marion Cnty., Indiana*, 703 F.3d 388, 390 (7th Cir. 2012) (citations omitted). Here,

5

Isbell was not treated in Franciscan Health's emergency room. And he was stabilized at Franciscan Health before he was transferred back to Indiana State Prison.

It is understandable that Isbell was upset by his brush with death. But "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). Isbell has already been given the chance to file an amended complaint to provide more information. Allowing him another opportunity would be futile.

For these reasons, this case is **DISMISSED** under 28 U.S.C. § 1915A.

                              **SO ORDERED.**

Date: September 6, 2024

                         s/James T. Moody
                         JUDGE JAMES T. MOODY
                         UNITED STATES DISTRICT COURT